BEALE, (CROCKER v.) See Case No. 3,-396.

BEALE, (EMMERSON v.) See Case No. 4,-469.

BEALE, (LINDENBERGER v.) See Case No. 8,359.

BEALE, (MEADE v.) See Case No. 9,371.

BEALE, (NUGENT v.) See Case No. 10,-376.

BEALE, (PENNOCK v.) See Case No. 10,-940.

---

## Case No. 1,158.

### BEALE v. PETTIT et al.

[1 Wash. C. C. 241.][1]

Circuit Court, D. Pennsylvania. April Term, 1805.

MARINE INSURANCE—ABANDONMENT—INSURABLE INTEREST—OPEN POLICY—EVIDENCE.

1. Action on a policy of insurance. A certificate given by a supercargo, upon his return from the voyage injured, and who, at the time it is offered, is dead, is inadmissible to prove the plaintiff's interest in the return cargo. Evidence cannot be given to prove what the supercargo had declared on this subject.

2. In an open policy, the plaintiff must prove his interest, and the value of his property, or he cannot recover. The bill of lading of the outward cargo, is no proof of the interest of the plaintiff in the homeward cargo.

3. Quere, whether, when, at the time of an offer to abandon, the property was restored, the assured can recover for a total loss?

At law. Action [by Beale against Pettit & Bayard] on a policy of insurance, on goods from Norfolk to Aux Cayes, and on the return cargo. The outward cargo was carried safely. The vessel took in a return cargo; was captured and carried into Jamaica; and libelled. The vessel, and most of the cargo, was restored, on stipulation to answer the appeal; and the vessel arrived, with the car-

go, in safety, at Norfolk. As soon as the plaintiff had notice of the capture, he gave notice to abandon; but at that time the cargo had been restored, and was on its return home; but this not known to the plaintiff. The bill of lading, invoice, or an account of sales of the return cargo, were not produced; nor did it appear that any had ever existed. The supercargo, after his return, gave a certificate, on oath, that he had sold the outward cargo, belonging to the plaintiff, and invested the whole in a return cargo. But the court refused to let this certificate be read, or hear evidence of what the supercargo, (now dead,) had declared in his life time, on this subject. The notice to abandon was given on the 6th of May, and the captain's protest, to prove the loss, was sent to the underwriters the 4th of November, at which time the vessel had arrived at Norfolk.

Ingersoll, for the defendants, objected to the recovery; 1st, because, at the time the abandonment was made, no proof of loss or property was made; 2d, because, at that time, the vessel was in fact in safety; 3d, no proof of property and value.

WASHINGTON, Circuit Justice, charged the jury. This policy is made in the name of one Leamy, for and on account of all persons concerned in the cargo. The plaintiff states himself to have been owner of a part of the return cargo; and if so, it is clear that he has a right to sue. But proof of his interest, and, (the policy being open,) of the value of it, must be made out to your satisfaction. It is of the very essence of this action, that he prove his interest. The protest of the captain is inapplicable to this point. The bill of lading, for the outward cargo, is no proof that the plaintiff was interested in the return cargo. The evidence most relied upon is, a paper delivered by the defendants to the plaintiff, in which they state, that no proof of property had been laid before them, but the declaration, on oath, of the supercargo; for which reason they refuse to pay. Now this paper does not make that declaration evidence, which we have declared is not evidence; particularly as the defendants state it as the ground of their refusal. Should the jury not be satisfied with the proof of property, they will find for the defendants. If otherwise, they will, find, subject to the opinion of the court, in a case to be stated, so as to enable us to decide more deliberately, the question,[2] whether, under

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] This question is more difficult than I at first supposed it. Marsh. Ins. p. 484, says, that if the assured at the time he receives advice of the loss, or before he has abandoned, receives advice also that the property is recovered, he cannot abandon; because he can only abandon while it is a total loss, and he knows it to be so; not after he knows of the recovery. The rule, he says, is, that if the thing insured be recovered before any loss is paid, the insured

the circumstances of this case, the plaintiff could abandon, and go for a total loss. The plaintiff agreed to be called, as soon as the jury returned to the bar, and suffered a non-suit.

---

may claim for a total or partial loss, according to the final event; that is, according to the state of the case at the time he makes his claim. In the case of Hamilton v. Mendes, 2 Burrows, 1198, Lord Mansfield says, "the question is, whether the plaintiff, who at the time of his action brought, at the time of his offer to abandon, and at the time of his being first apprized of the accident, had only sustained a partial loss, ought to recover as for a total one?" It is repugnant to recover as for a total loss, when the final event has proved it only an average loss. "The assured cannot elect before advice of the loss; and if that advice shows the peril to be over, he cannot elect at all; for he cannot abandon, when the thing is safe." The present is the first attempt that has been made to charge the insurer as for a total loss, upon an interest policy, after the thing was recovered. "If the thing in truth be safe, no artificial reasoning can set it up for a total loss." "In case the ship be taken, the insured may abandon; provided the capture, or the total loss occasioned thereby, continue to the time of abandoning and bringing the action." He again lays down the principle in the following words: "That the plaintiff can only recover an indemnity, according to the nature of his case, at the time of the action brought, or at most, at the time of his offer to abandon." I give no opinion how it would be in case the ship and goods were restored in safety, between the offer to abandon, and the action brought, or between the commencement of the action and the verdict." Here the event had fixed the loss to be an average only, before the action brought, before the offer to abandon, and before the plaintiff had notice of any accident.

Parker, Ins. 145, says, that it may be collected from Roccus, that in order to entitle the plaintiff to recover for a total loss; it must continue total at the time the offer is made to abandon, at the time the action is brought, or at the time of the payment of the money.

From what is said above, it is clear, that if at the time of the offer to abandon, the assured had notice of the recovery, he cannot abandon. But the question is, if at that time the property was in fact recovered, and in safety, and this unknown to the assured, can he abandon, if afterwards the fact appears? In the case of Goss v. Withers, 2 Burrows, 683, and Hamilton v. Mendes, [supra,] the assured knew of the recovery before his offer to abandon. But the judge, throughout, in laying down principles, speaks of the fact of recovery, before action brought, or offer to abandon. From which I should conclude, that if before the action brought, or offer to abandon, it should appear, that the property was in safety, the assured can only recover as for a partial loss. But suppose at the time of the offer to abandon, she was still detained, by virtue of the capture, but liberated before action brought? This is the question which Lord Mansfield says he does not mean to decide. But I think it clearly proves, that the question depends upon the fact, not upon the assured having or not having notice of it. Indeed, I cannot see why that circumstance should make any difference in the principle, which certainly is intended to prevent a loss, partial in its nature, from being converted into a total one. In Marshall v. Delaware Ins. Co., decided in this court, [Case No. 9,127,] at a subsequent session, and affirmed in the supreme court, (4 Cranch, [8 U. S.] 202,) it was decided, that the right to abandon depends on the state of the fact, at the time of the offer, and not the state of the information received.